# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | | |
|---|---|---|
| THE RECON GROUP LLP, | ) | |
| | ) | |
| Plaintiff, | ) | No.  5:23-CV-00163-KDB-DCK |
| | ) | |
| vs. | ) | |
| | ) | |
| LOWE'S HOME CENTERS, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ANSWER AND DEFENSES TO COUNTERCLAIM

Plaintiff The Recon Group LLP ("goTRG"), for its answer to Defendant Lowe's Home Centers, LLC ("Lowe's") Counterclaim, states as follows:

### NATURE OF THE CASE

1. Denied.

2. Denied.

3. Denied.

4. Denied.

### THE PARTIES

5. Admitted.

6. Admitted.

### JURISDICTION AND VENUE

7. Admitted.

8. Admitted.

9. Admitted.

1

10.    goTRG admits the Court has supplemental jurisdiction over Lowe's counterclaims as alleged.

11.    goTRG admits the Court has personal jurisdiction over it. goTRG denies the remaining allegations in paragraph 11.

12.    Admitted.

## FACTUAL BACKGROUND

13.    goTRG is without sufficient information to admit or deny the allegations in paragraph 13 and, therefore, denies the same.

14.    goTRG is without sufficient information to admit or deny the allegations in paragraph 14 and, therefore, denies the same.

15.    goTRG states that Lowe's created an application called My Red Vest using goTRG's intellectual property as outlined in the Amended Complaint. goTRG is without sufficient information to admit or deny the remaining allegations in paragraph 15 and, therefore, denies the same.

16.    goTRG admits that one function of My Red Vest is to process customer returns. goTRG is without sufficient information to admit or deny the remaining allegations in paragraph 16 and, therefore, denies the same.

17.    Denied.

18.    goTRG admits that Lowe's outsourced its reverse logistics services and software from goTRG. goTRG denies the remaining allegations in paragraph 18.

19.    Admitted.

20.    Admitted.

21.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 21 to the extent they are inconsistent with the SOW.

22.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 22 to the extent they are inconsistent with the SOW.

23.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 23 to the extent they are inconsistent with the SOW.

24.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 24 to the extent they are inconsistent with the SOW.

25.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 25 to the extent they are inconsistent with the SOW.

26.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 26 to the extent they are inconsistent with the SOW.

27.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 27 to the extent they are inconsistent with the SOW.

28.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 28 to the extent they are inconsistent with the SOW.

29.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 29 to the extent they are inconsistent with the SOW.

30.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 30 to the extent they are inconsistent with the SOW.

31.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 31 to the extent they are inconsistent with the SOW.

32.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 32 to the extent they are inconsistent with the SOW.

33.     The SOW and the ASPSA and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW or ASPSA by Lowe's or allegations in paragraph 33 to the extent they are inconsistent with the SOW or ASPSA.

34.     The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 34 to the extent they are inconsistent with the SOW.

35. The SOW and the parties' obligations within speak for themselves and goTRG denies any characterization of the SOW by Lowe's or allegations in paragraph 35 to the extent they are inconsistent with the SOW.

36. Denied.

37. goTRG admits Lowe's representatives were at the RLCs because there were two to three full-time, permanent Lowe's representatives on-site at each RLC. goTRG denies the remaining allegations in paragraph 37.

38. Denied.

39. goTRG admits that the return times were longer than goTRG desired. This was due to Lowe's errors and violations of the SOW and ASPSA. Namely, as discussed in the defenses section below, Lowe's failure to update incorrect and outdated vendor policies, made it difficult if not impossible for goTRG to process returned items. Lowe's admitted to these failures in various correspondence, including the following:

> **From:** Bowlin, Marci &lt;Marci.M.Bowlin@lowes.com&gt;; **Sent:** Wednesday, October 13, 2021 3:40 PM **To:** Gerhardine Escobar &lt;gescobar@gotrg.com&gt;; John Gregory &lt;jgregory@gotrg.com&gt;; Vanessa Llovet &lt;vllovet@gotrg.com&gt;; Foltz, Jonathan &lt;jonathan.foltz@lowes.com&gt;; Fowler, Madison &lt;madison.fowler@lowes.com&gt; **Cc:** Jason Palmberg &lt;jpalmberg@gotrg.com&gt;; Reuben Hooks &lt;rhooks@gotrg.com&gt;; Nicholas Bluhm &lt;nbluhm@gotrg.com&gt; **Subject:** RE: [EXTERNAL] RE: New Voice Message from SAIA (901) 396-1818 on 10/13/2021 1:20 PM
>
> Geri,
>
> I sent a note over to Randy and Monique at Sharp to confirm why the shipment was refused. My "guess" is that these are countertop microwaves. Below is the breakout that they provided me, and I think our opportunity is to work with the Merchandising Team to ensure none of the countertop microwave items show associated with VBU 467, all should be VBU 33025, which is a Dispose/No RA policy.
>
> I will confirm back on the shipment, as well as how we will keep these items from pulling under the wrong VBU moving forward.
>
> Thank you!
>
> Marci Bowlin

goTRG denies the remaining allegations in paragraph 39.

40.     goTRG admits that space was lost in the Las Vegas RLC due to certain items being too large for the conveyors because goTRG, in conjunction with Lowe's, purchased conveyors based on the specifications outlined in the Price Waterhouse Cooper ("PWC") Report, which incorrectly identified the average weight, size, and category of the product expected to flow through the facilities. Lowe's provided the PWC Report to goTRG and approved the information within. The PWC Report – titled Centralized Returns & Reverse Recovery (CRTM Model) – was the entire basis for Lowe's decision to revamp its "stone age" returns process and contract with goTRG. Lowe's, in fact, used the PWC report as the guiding basis for its dealings with goTRG. goTRG denies the remaining allegations in paragraph 40.

41.     Denied.

42.     goTRG admits that leadership from both parties met to address, in part, operational challenges caused by Lowe's incorrect and outdated vendor policies, which made it difficult if not impossible for goTRG to process returned items. goTRG denies the remaining allegations in paragraph 42.

43.     goTRG admits that one product (out of over 20 million products processed by goTRG during performance of the SOW and ASPSA) originating from an RLC was found on display for retail sale at a third-party reseller because, after goTRG acted in accordance with policy and disposed of the product, a third-party waste company appears to have taken the disposed of product and resold it. Despite Lowe's current claims of some wrongdoing by goTRG, Lowe's management was fully aware that a third-party waste management company had resold the ladders, after

goTRG brought the issue to their attention, and the matter was resolved at that time. goTRG denies the remaining allegations in paragraph 43.

44.     goTRG admits it created a "Facility Clean Up" plan in collaboration with Lowe's representatives stationed at the RLCs due to operational challenges and inefficiencies caused by Lowe's outdated and incorrect vendor policies, which hindered goTRG from timely and efficiently shipping returned products out of the RLCs, as reflected in the plan.

goTRG denies the remaining allegations in paragraph 44.

45.     goTRG is without sufficient information to admit or deny the allegations in paragraph 45 and, therefore, denies the same.

46.     Denied.

47.     goTRG is without sufficient information to admit or deny the allegations in paragraph 47 and, therefore, denies the same.  Though, goTRG states that – even if this allegation is truthful (which goTRG doubts), one complaint out of 5.2 million processed products yearly and over 1,200 vendors is exceptional service and performance.

48.     goTRG admits that, after the first six months of the parties' relationship, a Lowe's representative expressed doubts about some figures reported in the Operational Reporting Excel File and requested confirmation of their accuracy. However, goTRG denies any implication that such doubts were based on systemic inaccuracies. The only time issues were raised was during the transition period when the reporting process was being automated by mutual agreement between goTRG and

Lowe's. This automation, which both parties acknowledged would require adjustments, took approximately 2 to 3 months to resolve. During the initial six months of manual reporting, Lowe's did not raise any concerns about the accuracy of the figures.

49. goTRG admits that some of the issues raised in paragraph 49 were addressed through a settlement agreement that goTRG and Lowe's entered into in 2021, which included a mutual acknowledgment of shared responsibility for the operational challenges and included concessions by both parties. goTRG denies the remaining allegations in paragraph 49.

50. Denied.

51. goTRG admits that there were occasional delays in submitting forecasted expenses and revenue due to ongoing issues with Lowe's providing accurate and timely updated vendor policies and shipment information, which impacted goTRG's ability to create timely and accurate forecasts. These Lowe's issues are reflected in the below correspondence:

**From:** Steve Rop <srop@gotrg.com>
**Sent:** Monday, November 9, 2020 3:05 PM
**To:** Carpenter, Corey <corey.s.carpenter@lowes.com>
**Subject:** [EXTERNAL] Sat Oct 24 - Black and Decker

*EXTERNAL SENDER*

Peter J Mathis  12:06 PM

@Manny Cueto the inspection was delayed, first vendor inspection candidate, black and decker is in a policy conflict with Lowe's, B&D is itching to come inspect, but Lowe's vendor team stopped us. We reached out to Char Griller after, they do not have a rep in the LVGNV area. Since then we have not identified another candidate for test run.

**From:** Carpenter, Corey <corey.s.carpenter@lowes.com>
**Sent:** Monday, November 9, 2020 11:28 PM
**To:** Steve Rop
**Subject:** RE: [EXTERNAL] Sat Oct 24 - Black and Decker

I have a better understanding on this…we are in negotiations with B&D's executive team on vendor allowance policies. I will work with our Merchant partners to streamline this and provide a resolution date.

Corey



goTRG denies the remaining allegations in paragraph 51.

52. goTRG admits that labor and operating expenses exceeded budget due to inaccurate information provided to goTRG by Lowe's in the PWC Report. The ongoing challenges with incorrect and outdated vendor policies contributed significantly to the higher-than-expected costs, as admitted in the below correspondence:



RE: [EXTERNAL] RE: Call for RA- Updates Needed

Fowler, Madison <madison.fowler@lowes.com>
To: Gerhardine Escobar; Vanessa Llovet; Burfield, Jane-Anna; Bowlin, Marci
Cc: Jonathan Foltz; Gould, Jason; Barlow, Erin

Hi Jane-Anna,

We have contacted 17 Call for RA vendors from the list you have provided highlighted in yellow. goTRG is managing business on a rolling file – below is our update for the week.

**Vendors we have contacted:**

**Wins:**

- LL BUILDING PRODUCTS 664 – We are waiting for an RA to be provided from vendor

**Pending response from Vendor:**

- JACUZZI WHIRLPOOL BATH 69094
- BRASSCRAFT CORPORATION 72906
- UPF RETAIL, LLC (DECKORATORS) 87197
- AMERICAN WATER HEATER 155
- SIMPSON STRONG-TIE CO., INC 72913
- ATRIUM WINDOWS 33872
- PELLA CORPORATION 1257
- WESTERN REFLECTIONS, LLC. 424
- PELLA CORPORATION – PORTLAND 40446
- TRU LOGISTICS INCORPORATED 98593
- V T INDUSTRIES INC 1110
- PELLA INSTALLATION ACCESSORIES 104882
- UNITED WINDOW DOOR MFG INC 74835
- TREX 63201

**Vendors Contacted Email Bounce back – Will need Lowe's Support:**

- BARRETTE OUTDOOR LIVING, INC 73428- Vendor confirmed RA@US.EBARRETTE.COM is the correct returns address
- GREENLEE TEXTRON 72068- Reached out to vendor to capture updated returns address.

**Pending update from Lowe's Policy Team/Merch Ops:**

- RSI 444- Pending Contract Signing for policy update.
- MASTERBRAND CABINETS INC. 66150- Policy was recently updated to Dispose No RA effective 11/12/2021. Will you please provide a manifest of pre-flip inventory and we can see how they would like to handle?
- LG ELECTRONICS USA INC 49317- Pending Negotiations.
- WHIRLPOOL CORP 46- Pending Negotiations.
- ELECTROLUX HOME PRODUCTS 2251- Pending Negotiations.
- MOHAWK CARPET DISTRIBUTION, IN 19871- Pending Negotiations.
- MOHAWK CARPET DISTRIBUTION, IN 55274- Pending Negotiations.
- WEBER STEPHEN PRODUCTS CO 905- Will you please provide a manifest for this vendor? Grills should not be sent to the RLC's moving forward and will be destroyed and not file for credit. All accessories should be DIF No RA moving forward.
- A&J MANUFACTURING, LLC 49769- Pending Policy Breakout
- CHAR-BROIL LLC 82210- Pending Policy Breakout
- DANSONS US, LLC 97531- Pending Policy Breakout
- CHAR BROIL 451- Pending Policy Breakout

***We're seeing new vendors show up in CALL FOR RA. We will contact as inventory accumulates across facilities.***

goTRG denies the remaining allegations in paragraph 52.

53.    goTRG admits that there were shipping delays and challenges in meeting the volume of outbound shipments caused by Lowe's incorrect and outdated vendor policies, which prevented timely processing and shipping of returned products. These issues were compounded by labor shortages at the Palmetto RLC due to the COVID-19 pandemic, which further impacted processing capabilities. goTRG denies the remaining allegations in paragraph 53.

goTRG admits that liquidation product occasionally accumulated in the RLCs, including the Indianapolis facility, but denies that this was due to any failure on goTRG's part. The buildup of liquidation products and underperformance in sales

were primarily the result of Lowe's outdated and inaccurate vendor policies, which delayed the timely disposition and shipment of RTV product, as reflected in the correspondence in goTRG's answer to paragraph 52. goTRG denies the remaining allegations in paragraph 54.

54. goTRG admits that during one quarter, 175,600 RTV units valued at $15,600,000 were rejected by vendors and flipped to liquidation due to inaccurate and outdated vendor policies set by Lowe's, as reflected in multiple communications between the parties, including the following:





The ongoing negotiations between Lowe's and the vendors over policy issues prevented goTRG from promptly shipping certain products. goTRG denies the remaining allegations in paragraph 55.

55. goTRG admits that in one quarter, 36,700 RTV units valued at $1,300,000 were rejected by vendors and had to be flipped to liquidation due to inaccurate and outdated vendor policies set by Lowe's, as reflected in multiple communications between the parties and Lowe's own internal documents, including the following:





The ongoing negotiations between Lowe's and the vendors over policy issues prevented goTRG from promptly shipping certain products. goTRG denies the remaining allegations in paragraph 56.

56.     Denied.

57.     goTRG admits that, several months before the termination of the SOW, a mitigation plan was created in collaboration with Lowe's to address operational challenges that were caused by Lowe's incorrect vendor policies and ongoing policy changes. goTRG denies the remaining allegations in paragraph 58.

58.     Denied.

59.     goTRG admits that Lowe's notified goTRG that Lowe's was terminating the SOW in a letter dated August 25, 2022. goTRG denies the remaining allegations in paragraph 60.

60.     goTRG admits that, as part of the termination process, Lowe's paid goTRG $1,584,244.60 to purchase all capital assets owned by goTRG, which included a 9% management fee required by the SOW. Under Section VII.A.1.a of the SOW, Lowe's was required to pay goTRG a "Cost + Markup" fee, which included a 9% markup applied to all labor, expenses, and capital purchases. The SOW does not limit the application of this markup to "certain" or "some" capital purchases but applies it universally to all capital purchases. goTRG denies the remaining allegations in paragraph 61.

61.     Denied.

62.     Denied.

63.     Denied.

## **COUNTERCLAIM COUNT I**

64.     goTRG incorporates its answers to paragraphs 1–64.

65.    The SOW and ASPSA speak for themselves and goTRG denies any characterization of the SOW or ASPSA by Lowe's in paragraph 66.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

## COUNTERCLAIM COUNT II

71.    goTRG incorporates its answers to paragraphs 1–71.

72.    Denied.

73.    Denied.

74.    Denied.

## PRAYER FOR RELIEF

goTRG denies each of Lowe's claims for relief.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

For its affirmative and additional defenses to Lowe's counterclaim, goTRG states as follows:

### *Facts supporting defenses*

1.    Lowe's counterclaim is nothing more than a "best defense is a good offense" approach to litigation.  However, the "offense" in this case is far from good and actually further identifies Lowe's wrongful conduct. Simply put, Lowe's was

responsible for the inventory backup reflected in the counterclaim allegations and images.

2.    Lowe's counterclaim is entirely without merit and misrepresents the true nature of the relationship between the parties under the SOW and ASPSA. Contrary to Lowe's portrayal of goTRG as being solely responsible for alleged operational failures at the return logistics centers (RLCs), the agreements established a joint partnership in which Lowe's had significant, ongoing involvement in the successful operation of the RLCs and the parties' performance of the SOW and ASPSA. *See, e.g.,* SOW, Section V.A.9(a)-(b), Section III.B.5.c.ii(A), and Section III.B.5.c.ii(B).

3.    Lowe's consistently maintained a full-time, on-site presence at each of the RLCs, with two to three "red vest" representatives stationed at each facility five days a week. These representatives were embedded in daily operations and fully aware of the challenges and issues that arose. Far from occasional site visits, these individuals were part of and actively involved in management of the RLCs. As such, any claim of a lack of communication between goTRG and Lowe's is undermined by the constant presence and active participation of Lowe's own personnel.

4.    Lowe's counterclaim also ignores that the operational challenges alleged through its counterclaim were, as noted, **<u>a direct result of Lowe's own incorrect and outdated policies and Lowe's failure to update those policies</u>**. Specifically, Lowe's failure to revise its vendor return policies caused significant delays in processing RTV product. This forced goTRG to unnecessarily liquidate

product, as Lowe's policies, along with its failure or delay in updating them, hindered or completely obstructed the ability to ship returned items back to vendors.

5. Communications between the parties, including numerous emails, PowerPoints, and other documents show that goTRG worked closely with Lowe's to address these policy issues, but Lowe's failed to timely implement necessary changes. As a result, product turnover was delayed through no fault of goTRG.

6. Lowe's conveniently ignores its own obligations under the SOW and ASPSA—breaches of which directly caused the very issues it now attempts to blame on goTRG.

7. First, Section III.B.5.c.ii(A) of the SOW provides that goTRG "will work collaboratively with Lowe's team to improve the quality of Lowe's data and vendor policies through use of [goTRG's] technology and services." This provision underscores that, while goTRG is tasked with collaboration, the authority to update and improve Lowe's vendor policies necessarily lies with Lowe's. Without Lowe's active involvement, goTRG cannot independently update or improve Lowe's vendor policies.

8. Second, under Section III.B.5.c.ii(B) of the SOW, goTRG could raise with Lowe's issues with policies or instructions that are contrary to best practices of RTV management. goTRG consistently fulfilled this obligation under the SOW and ASPSA, collaborating with Lowe's to address issues with vendor policies. Further, Section III.B.5.c.ii(B) states that goTRG "***shall not be liable for mis-shipped Product if [goTRG] is following Lowe's policies***." goTRG met its obligation by

following Lowe's policies, despite those policies being outdated and incorrect. Despite goTRG's efforts, Lowe's repeatedly failed or refused to update its vendor policies, resulting in delays in the timely processing of RTV products.

9. Third, Section IV.A.9(a)–(b) of the SOW requires Lowe's to "provide and maintain... vendor policy information [and] Data feed Product and vendor information." This duty, of course, includes ensuring that goTRG has access to accurate and updated vendor policy data necessary for the effective processing of returns. The provision makes clear that Lowe's is responsible for the management and upkeep of the policies that govern how returned products should be handled. By failing to update and maintain these vendor policies in a timely manner, Lowe's failed to meet its contractual obligation under this section, directly impacting goTRG's ability to efficiently manage returned products and resulting in unnecessary delays and complications in goTRG's performance of the SOW and ASPSA.[1]

10. Lowe's also falsely alleges that goTRG improperly stored items outside the RLC, disregarding that **Lowe's itself wrongfully sent hazardous materials to goTRG that could not legally be stored inside the RLC**.

11. The RLCs were never designed or certified to store hazardous materials, and Lowe's was well aware of this limitation. Despite this, Lowe's shipped chemicals like weed killers and bug spray to the RLC, products that could not be stored inside without violating safety regulations. In fact, the very picture Lowe's attaches to its

---

[1] These three provisions are merely examples and by no means an exhaustive list of Lowe's obligations or breaches of those obligations under the SOW and ASPSA.

counterclaim shows a pallet of chemicals improperly shipped to the RLC by Lowe's, containing hazardous materials that could not legally be stored within the facility:



*See* Dkt. 32, Counterclaim at ¶ 38.

12. To comply with safety regulations **and avoid violating federal law**, goTRG moved these items outside the facility, ensuring they were properly secured within fenced perimeters and gated guard shacks.

13. In the same vein, Lowe's selectively highlights certain photographs taken on unspecified dates, trying to paint an inaccurate picture of the RLCs as disorganized and poorly managed. This portrayal is misleading and incorrect. In one instance, Lowe's includes a photograph showing unsorted items from an inbound shipment—items that were delivered in a disheveled state **by Lowe's itself**. These products had not yet been categorized or processed by goTRG:



14.     Finally, Lowe's counterclaim glaringly omits any mention of the 2021 settlement agreement between the parties, which directly bars the claims Lowe's now attempts to re-litigate.

15.     In early 2021, the parties began discussing resolving ongoing issues related to overflow charges and shrink discrepancies (the subject of Lowe's counterclaims):

**From:** Carpenter, Corey <corey.s.carpenter@lowes.com>
**Sent:** Wednesday, April 21, 2021 3:31 PM
**To:** Steve Rop <srop@gotrg.com>
**Subject:** RE: Lowes | goTRG Settlement

Steve – From our conversation this morning, here is the adjusted path to settlement. Please let me know once you are in agreement.

Couple of Actions we need to be on top of from a timing standpoint:

- **Revised Overflow Invoices:** Will Need Revised Overflow Invoices for Payments so We can Process this week – Need these ASAP once agreed upon
  - o Per our discussion, $'s Spread for July – December Invoices
- **Liquidation Payments:** Need Liquidation Payments for Balance through March Immediately
- **Expense Invoice Payment:** We are in Process of Paying all open Labor & OpEx invoices that were sent over yesterday, will be 100% caught up by end of week
- **Snapshot and Accrual:** We need the snapshot from the Accounting Team ASAP (Due Monday, Jason and Bri have been working on this)
  - o We will need to work closely together next week to ensure Month End Accruals are tight so that we do not carry a +/- balance into Q2 (as best as possible)

Thanks,

Corey

---

**From:** Carpenter, Corey <corey.s.carpenter@lowes.com>
**Sent:** Thursday, April 22, 2021 8:28 PM
**To:** Steve Rop
**Subject:** Re: [EXTERNAL] FW: Lowes - overflow invoices part 3

Steve - Per our conversation to night. Lets agree to processing the described Lowe's payment(previous email) for Overflow and goTRG payments for liquidation in good faith towards finalizing this and holding to the deliverable for May spend and cap rate moving forward along with quarterly revues and shrink accruals.

We will hold on the May discounts discussion while we finalize overflow and cap rates.

Thanks,

Corey

Sr. Director - Store Operations
Lowe's Home Improvement

16.     As for overflow charges, Lowe's consistently sent trucks to the RLC that goTRG could not unload or process due to a significant backlog of products in the facility. This backlog, as previously noted, was the direct result of Lowe's own outdated and inaccurate vendor return policies, which prevented goTRG from timely shipping returned products back to vendors. Thus, product piled up in the RLC, leaving no room for further shipments and causing overflow. goTRG properly charged Lowe's for these overflow conditions.

17.     The 2021 settlement resolved this by requiring Lowe's to pay a flat rate to settle the overflow charges. goTRG also agreed that it would not impose on Lowe's incremental charges—such as overflow charges—unless explicitly agreed to by Lowe's in advance of the expense being incurred.

18.     As for the shrink discrepancies, there was an ongoing dispute between the inventory Lowe's claimed to have shipped to the RLC and the quantities goTRG confirmed receiving and processing. Lowe's alleged that the missing inventory was lost, stolen, or otherwise unaccounted for, while goTRG argued that the discrepancies were due to data errors, missing records, or faulty shipment information. To settle the matter, the settlement agreement established metrics for acceptable shrink. goTRG also agreed to provide credits to Lowe's on future invoices.

19.     By agreeing to these terms, Lowe's agreed to resolve certain claims it now seeks to re-litigate in its counterclaim, despite having already settled these matters in 2021. As such, the 2021 settlement bars those claims from being raised again.

20.     In sum, Lowe's counterclaim distorts the facts and presents a selective, skewed narrative that fails to reflect the full scope of the parties' relationship and their respective responsibilities under the SOW and ASPSA. By omitting key context, ignoring its own policy failures, and downplaying its active involvement in the RLCs, Lowe's attempts to shift blame onto goTRG for operational challenges it largely contributed to or directly caused.

## First Affirmative Defenses
### (Mere "Breach" Insufficient for UDTPA claim)

As to the Unfair and Deceptive Trade Practices Act (UDTPA) claim, North Carolina law requires more than a simple breach of contract to state a claim under the UDTPA. If a valid breach had been alleged (which it has not), a mere breach of contract, even if intentional, does not constitute an unfair or deceptive trade practice under the UDTPA. Lowe's must allege specific aggravating circumstances such as fraud, deception, lies, forged documents, or fraudulent inducement, none of which have been alleged in the counterclaim. The counterclaim merely alleges routine contract performance without any allegations of deceptive conduct. Since the allegations fail to rise to the level required for an unfair trade practices claim, they do not state a cause of action under the UDTPA.

## Second Affirmative Defenses
### (Accord and Satisfaction)

Lowe's counterclaim is barred by the settlement agreement reached by the parties in 2021, which Lowe's inexplicably omits from its counterclaim or the factual allegations within. This agreement between the parties resolved and settled several of the alleged issues raised in the counterclaim. As part of the settlement, Lowe's and goTRG addressed issues related to the overflow charges and disputes over shrink, which involved discrepancies between the products Lowe's claimed to have shipped and what goTRG confirmed it had received. The settlement included a revision to the shrink allowance, or "shrink buckets," setting specific metrics for shrinkage on a quarterly and yearly basis. Lowe's paid overflow charges, accepted credits on invoices from goTRG, and agreed upon terms of the settlement. Lowe's claims are barred by

this prior settlement.

## Third Affirmative Defense
**(First to Materially Breach)**

Lowe's counterclaim is barred because it was the first party to materially breach the SOW and the ASPSA, precluding any claims it may have regarding goTRG's performance. Throughout its performance under the SOW and ASPSA, Lowe's failed to meet its contractual obligations.

First, Lowe's did not provide accurate forecasts or reliable data on inbound shipments and product categories, which significantly affected goTRG's ability to manage the RTV products. Specifically, Section IV.A.9(a) and (b) of the SOW obligates Lowe's to "provide and maintain the following resources: a. Vendor policy information; b. Data feed Product and vendor information." By failing to supply accurate and up-to-date vendor policy information and data feeds, Lowe's breached its obligations, making it difficult for goTRG to plan and manage resources effectively.

Further, the original business case and budget, developed based on the PWC Report provided to goTRG by Lowe's, were inaccurate, further complicating goTRG's ability to meet performance metrics.

Lowe's also shipped incorrect and non-compliant materials to the facilities, such as hazardous chemicals, forcing goTRG to take measures to remain compliant with safety regulations, including storing those shipments outside of the Reverse Logistics Centers (RLCs). While goTRG fulfilled its obligations to handle materials

24

properly, Lowe's failure to inform goTRG of such shipments or to update policies accordingly hindered operations and placed additional burdens on goTRG.

The continued presence of Lowe's representatives at the facilities also negates any claim of communication failures. goTRG worked with Lowe's to address incorrect vendor policies that caused delays in shipping RTV products, but Lowe's failed to make timely adjustments. According to Section III.B.5.c.ii(A) of the SOW, "[goTRG] will work collaboratively with Lowe's team to improve the quality of Lowe's data and vendor policies through use of [goTRG's] technology and services." Further, Section III.B.5.c.ii(B) states that goTRG "***shall not be liable for mis-shipped Product if [goTRG] is following Lowe's policies***."

Despite goTRG's efforts to collaborate and improve vendor policies, Lowe's failed to make timely adjustments, resulting in extended product stays and, eventually, liquidation. These delays, along with Lowe's refusal to fix vendor policies, directly caused RTV products to be flipped to liquidation, reducing the recovery value and creating operational inefficiencies. Notably, under Section III.B.5.c.ii(B) of the SOW, goTRG was not liable for mis-shipped product if it was following Lowe's outdated policies.

Additionally, Lowe's made several management errors, such as incorrectly identifying the average size and weight of products for the conveyors, further exacerbating logistical problems. Under Section IV.A.9(b) of the SOW, Lowe's was responsible for providing and maintaining accurate vendor information. Their failure

to fulfill this obligation directly affected goTRG's operations and led to the issues Lowe's now alleges in its counterclaim.

Any alleged performance issues by goTRG were directly caused by Lowe's own mismanagement, incorrect vendor policies, and failure to provide the necessary support and infrastructure to ensure successful performance of the SOW and ASPSA. In failing to do so, Lowe's materially breached the SOW and ASPSA. Consequently, any claims Lowe's may have regarding goTRG's performance are precluded due to its own contractual breaches.

### Fourth Affirmative Defense
**(Illegality)**

Lowe's counterclaim is barred in part by the doctrine of illegality. Lowe's contributed to the alleged breaches by shipping goTRG hazardous materials, such as weed killers and bug sprays containing hazmat materials, which could not legally be stored inside the RLCs. As a result, goTRG was forced to store these materials outside in a secure area to comply with OSHA regulations, despite Lowe's claim that doing so constituted a breach. Since goTRG was acting in compliance with legal requirements and Lowe's sent products that could not be legally handled inside the facility, goTRG did not breach the SOW or ASPSA by storing these items outside the RLC.

### Fifth Affirmative Defense
**(Limitation of Liability in the SOW)**

Lowe's counterclaim is limited by the plain language of the SOW. Under Section III.B.3.a of the, goTRG's liability for losses to the product is limited to a maximum liability of $2,000,000 per location/per occurrence—above the "shrink

26

allowance" as defined in the SOW—and is restricted to instances where the losses were caused by the negligent acts or omissions of goTRG or its personnel while the product was in their care, custody, or control.

Specifically, the SOW states that goTRG "shall not be liable for any loss to Product, however caused, unless such loss resulted from the failure of [goTRG] to exercise such care in regard to the Product as a reasonably careful person would exercise under like circumstances." Here, the product losses were not caused by goTRG's failure to exercise reasonable care but rather the direct result of Lowe's actions or inaction.

Further, Section III.B.3.c of the SOW establishes that Lowe's exclusive remedy for product loss or damage is limited to the liability caps outlined in the SOW, specifically capping any damages related to inventory shortage or mysterious disappearance claims. Thus, Lowe's counterclaim for any losses beyond the scope of this exclusive remedy is contractually barred, as the SOW expressly limits goTRG's responsibility and remedies available to Lowe's.

### Sixth Affirmative Defense
### (Failure to Mitigate)

If Lowe's suffered any damages as a result of goTRG's actions (it did not), Lowe's failed to take reasonable steps to mitigate its damages. Lowe's outdated and incorrect vendor policies and operational inefficiencies directly contributed to product staying in facilities too long, leading to liquidation and losses. Lowe's had multiple red vest representatives on-site daily and knew the issues firsthand but did not address or resolve them in a timely manner despite goTRG's repeated insistence that

it do so.

### Seventh Affirmative Defense
### (Waiver)

By agreeing to the 2021 settlement as outlined above, Lowe's waived and released its counterclaim.

### Eighth Affirmative Defense
### (Contributory Negligence)

Lowe's own negligence directly contributed to the damages it now claims. Lowe's outdated and incorrect vendor policies—along with its failure to update those policies in a timely manner—significantly impacted goTRG's ability to efficiently process and ship RTV products. These outdated policies caused unnecessary delays, forcing goTRG to liquidate products that could have otherwise been returned to vendors. Moreover, Lowe's representatives were permanently stationed at the RLCs and were fully aware of these ongoing issues but failed to resolve them.

### Ninth Affirmative Defense
### (Estoppel)

Lowe's counterclaim is barred by the doctrine of estoppel. Throughout the performance of the SOW and ASPSA, Lowe's was actively involved in the operations and management of the RLCs, maintaining a constant presence with its representatives on-site. Lowe's actions, decisions, and failures to update its own vendor policies contributed to the issues it now seeks to blame on goTRG. By leading goTRG to reasonably rely on Lowe's conduct and representations regarding the management of the RLCs, Lowe's cannot now assert claims against goTRG for problems it helped create or exacerbate. Thus, Lowe's is estopped from asserting its

counterclaims, having contributed to and acquiesced in the circumstances underlying the alleged breaches.

## Tenth Affirmative Defense
### (Unclean Hands)

Lowe's counterclaim is barred by the doctrine of unclean hands. Lowe's own wrongful conduct, including its failure to update outdated vendor policies and its shipment of hazardous materials to goTRG's facilities, directly contributed to the operational challenges it now seeks to attribute to goTRG. Lowe's continuous involvement in and control over these operations, while knowingly allowing these issues to persist, precludes it from claiming that goTRG's actions caused the alleged damages. Having contributed to the very conditions it complains of, Lowe's cannot seek relief against goTRG.

## Eleventh Affirmative Defense
### (Fraudulent Inducement)

Lowe's counterclaim is also barred by the doctrine of fraudulent inducement. goTRG entered into the SOW and ASPSA based on representations made by Lowe's, including the PWC report, which provided critical data regarding the expected volume and types of products to be processed. This data, later discovered to be inaccurate, was a material factor in goTRG's agreement to the SOW and ASPSA. By providing false or misleading information, Lowe's fraudulently induced goTRG into a contract that it would not have otherwise entered into had it known the truth about those statements.

## Twelfth Affirmative Defense
### (SOW Section III.B.5.c.ii(B))

Section III.B.5.c.ii(B) states that goTRG "***shall not be liable for mis-shipped Product if [goTRG] is following Lowe's policies***." goTRG followed Lowe's policies at all times, despite those policies being outdated and incorrect. Despite goTRG's efforts, Lowe's repeatedly failed or refused to update its vendor policies, resulting in delays in the timely processing of RTV products. Under the SOW, goTRG is not responsible for those delays or liquidation of those RTV products due to Lowe's outdated and incorrect vendor polices.

WHEREFORE, Plaintiff goTRG demands judgment in its favor and against Defendant Lowe's Home Centers on all claims in goTRG's Amended Complaint, asks the Court to dismiss Lowe's counterclaim in its entirety and award goTRG damages equivalent to the reasonable value of the benefits goTRG conferred to Lowe's and for all such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this the 18th day of October, 2024.

By: *s/ Marc E. Gustafson*
    Marc E. Gustafson (N.C. State Bar 34429)
    BELL, DAVIS & PITT P.A.
    227 W Trade St.
    Charlotte, NC 28202
    704.227.9837
    mgustafson@belldavispitt.com

    Michael A. Sayre (admitted *pro hac vice*)
    ARMSTRONG TEASDALE LLP

355 Alhambra Circle, Suite 1200
Coral Gables, FL 33134
305.371.8809
msayre@atllp.com

Marc Vander Tuig (admitted *pro hac vice*)
Paul L. Brusati (admitted *pro hac vice*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
314.621.5070
mvandertuig@atllp.com
pbrusati@atllp.com

*Attorneys for Plaintiff The Recon Group LLP*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 18, 2024, the foregoing pleading was served on counsel for all parties who have made an appearance in this proceeding via the Court's CM/ECF filing system.

<div align="right">

*s/Marc E. Gustafson*
Marc E. Gustafson

</div>